

CV 00-05525  ·00000033

FILED _____ENTERED
_____LODGED _____RECEIVED

Received From
SEATTLE

FEB 2 1 2002   KN

FEB 2 2 2002

AT SEATTLE
CLERK U S DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

The Honorable Franklin D Burgess

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| DAVID CONNOLLY and GARY MURRELL, | No C005525fdb |
|---|---|
| Plaintiffs, | AFFIDAVIT OF MARK REISMAN |
| v | |
| JEWELL MANSPEAKER, VICKI MITCHELL, and MARK REISMAN, | |
| Defendants | |

STATE OF WASHINGTON )
                    ) ss
County of Grays Harbor )

Mark Reisman, duly sworn upon oath, declares and states that

1    I have served at Grays Harbor College since 1978 I served as Associate Dean for Continuing Education from 1984 to 1998 Since 1998, I have served as Dean for Extended Learning I report to the Vice President for Instruction I see defendant Manspeaker regularly in the course of my work

2    My responsibilities include oversight of part-time faculty and their course scheduling I make these decisions in conjunction with the faculty division chairs and the Vice President for Instruction

AFFIDAVIT OF MARK REISMAN
C005525fdb

1

ORIGINAL

ATTORNEY GENERAL OF WASHINGTON
Tort Claims Division
900 – Fourth Avenue, Suite 2200
Seattle, WA 98164-1012
(206) 464-7352

C \EUDORA\ATTACH\PT EDITED AFFIDAVIT OF
MARK REISMAN DOC

3    Student enrollment at the College increased during 1990-1995  In Fall Quarter 1997, enrollment began to significantly decrease  This was reflected in reduced funding and a need to reduce overall staffing  We had to look at ways to reduce instructional costs  When enrollment declines, fewer courses are offered and other courses do not receive enough enrollment to be taught or suffer higher cancellation rates  Course offerings also decrease

4    I recommended to Manspeaker that the College consider reducing the number of course selections and enlarge the pool of part-time faculty utilized regularly  I believe that an expanded skill base benefits students, the college, and the community

5    I personally hoped for continuation of Washington Education Association (WEA) representation of faculty at the College  I was surprised that Manspeaker did not oppose the de-certification of WEA   However, he saw benefits in having Grays Harbor College Federation of Teachers (GHCFT) at the College and remained neutral

6    I have never known Manspeaker to express concern about GHCFT or make threatening or derogatory statements about the union or its officers  I have found Manspeaker to be very accommodating towards unions and completely fair in application of policies and practices to the College's faculty and personnel, union members and non-members

7    I do not and have not made any administrative decisions on the basis of union membership or non-membership  I have never retaliated against Connolly or Murrell because of their union association or union speech

8    I have known Connolly since the mid-1980's  To my knowledge, Connolly has never applied for a full-time permanent teaching position at the College  I have offered him part-time teaching contracts for many years  I continue to offer Connolly individual course contracts for part-time employment on a quarterly basis  This is the same that I continue to do for all part-time faculty members

AFFIDAVIT OF MARK REISMAN        2
C005525fdb

C \EUDORA\ATTACH\PT EDITED AFFIDAVIT OF
MARK REISMAN DOC

9   Part-time faculty members have no guarantees of continued teaching or the number of courses to be taught Full-time faculty members have first choice on teaching assignments and can "bump" part-time faculty from courses

10   In October of 1997, Connolly refused to sign his teaching contract Connolly apparently thought it was unfair that part-time instructors were paid more to teach day rather than evening classes since day classes included payment for office hours The College could not accept the liability of an instructor teaching without a contract Ultimately, Connolly signed his contract and continued to teach

11   Part-time faculty members were represented by WEA and continue to be represented under terms of the GHCFT collective bargaining agreement They have grievance protections just like full-time tenured faculty

12   I wrote a letter of recommendation for Connolly as he pursued a sabbatical replacement position during the summer of 1997 A screening committee reviewed the applicants and Connolly was interviewed Neither Manspeaker, Mitchell, nor myself were on the Sabbatical Replacement Committee or participated in the selection process Connolly was not a finalist Connolly was upset and came to speak to me Darellyn Miller, a union member on the selection Committee, informed me that Connolly's union membership had nothing to do with the Committee's decision I understand that the union affiliation of the individual candidates was never discussed Rather, it was Connolly's demeanor Other faculty did not want to work with him I also believe that the person hired for the sabbatical replacement position, Greg Mooney, was a union member Appended as Exhibit A is a true and correct copy of my April 16, 1997 letter of recommendation for Connolly

13   Later, Connolly applied to be Tech Prep Coordinator A screening committee reviewed applications and interviewed applicants Neither defendants' Manspeaker, Mitchell, nor myself were on the screening Committee or participated in the recommendation I understand that Connolly was not selected because he did not have the experience sought

AFFIDAVIT OF MARK REISMAN          3
C005525fdb

ATTORNEY GENERAL OF WASHINGTON
Tort Claims Division
900 – Fourth Avenue, Suite 2200
Seattle, WA 98164-1012
(206) 464-7352

C:\EUDORA\ATTACH\PT EDITED AFFIDAVIT OF
MARK REISMAN DOC

Lisa Jolly, the person selected, was a child and family therapist before coming to the College and had worked as a counselor at the College for a year before applying for the Tech Prep position  Connolly did not have this experience

14   I have never told Connolly that his union activities had impeded his ability to secure a full-time position

15   After Connolly's abusive behavior towards fellow instructor Ron Battles in Fall Quarter 1998, I recommended that the College not hire Connolly anymore  Defendant Manspeaker overruled me  Connolly has continued to receive teaching contracts

16   In offering courses, we factor-in the kinds of courses needed by students for degree purposes with faculty available and qualified to teach them  I also told Connolly that the College did not want to rely upon only one instructor to teach each course and that I wanted to spread teaching responsibilities among a larger pool of faculty members  Connolly may have objected by telling me that the College already had a pool of experienced part-time faculty  I disagreed with that position

17   Connolly has been treated no differently than other part-time faculty with respect to the number of courses he has been allowed to teach  Union membership or non-membership before or after formation of GHCFT in 1996 has never been a factor  During 1993-94, Connolly was offered one course for two of four quarters  During 1994-95, he was offered one course for two of four quarters  During 1995-96, he was offered no courses, and I recall that Connolly may have had other full-time employment outside the college during this period  During 1996-1997, he was offered two courses for four quarters  During 1997-98, he was offered no courses for Summer Quarter, three for Fall, and two for Winter and Spring each  During that Summer Quarter, I believe Connolly may have been "bumped" from a course by a full-time instructor who wanted to teach it

18   During 1996-97, I believe that Connolly began to indirectly seek full-time instructor benefits because he was not able to secure full-time work outside the College  At some

AFFIDAVIT OF MARK REISMAN          4
C005525fdb

C \EUDORA\ATTACH\PT EDITED AFFIDAVIT OF
MARK REISMAN DOC

point, I became aware that the College seemed to be a very significant part of his full-time income

19 During 1998-98, Connolly was offered one course per quarter, except for Fall Quarter 1998, when he was offered two courses

20 Any part-time faculty member who is continuously offered more than one course per quarter can become eligible for medical and retirement benefits The College's limited budget resources available, especially beginning with the 1997-98 time period, made this a more important consideration I had concerns that Connolly was beginning to look upon his part-time employment at the College as full-time with respect to benefits I did not tell this to Connolly

21 Course cancellations are a fact of life at the College This was not something new and definitely not unique to Connolly It was also not something distinguishing union members from non-union members Part-time instructors like Connolly tend to teach the evening courses Enrollment problems caused many evening courses in particular to be cancelled

22 Continuing education courses are invariably labeled in the school catalogue as being taught by "staff" because of catalogue printing needs I saw nothing that indicated that Connolly was treated differently from other part-time faculty with respect to publication of courses

23 I am aware of at least one student complaint about Connolly sometime the summer of 1996 I interviewed both Connolly and the student and concluded that it was a personal conflict No disciplinary action was taken

24 I have never heard Dr Manspeaker call plaintiff Murrell a "troublemaker" or words to that effect I did hear Manspeaker once refer to Murrell as a "pain in the ass " I believed then and now that this is not in reference to Murrell as a union official I am not aware of Manspeaker making any other negative comments about Murrell

25 At about the time Murrell first came to the College, I found that he was not well prepared for instruction of a Political Science course I offered my assistance, but Murrell refused

AFFIDAVIT OF MARK REISMAN
C005525fdb

5

ATTORNEY GENERAL OF WASHINGTON
Tort Claims Division
900 – Fourth Avenue, Suite 2200
Seattle, WA 98164-1012
(206) 464-7352

Murrell later asserted that I never offered any support, which was a definite misstatement of the truth  Murrell was tenured over my objections

26    I have personally observed Murrell's uncivil behavior and outbursts at faculty meetings  Murrell asserted once that Manspeaker said that the College faculty was, "Bad, Bad, Bad "  This was untrue   Manspeaker never said any such thing  Murrell was unhappy because he did not receive a Faculty Excellence Development Award   I also observed Murrell walking-out during a former Board Trustee's commencement address and I was shocked by his rude behavior, but no action was even considered

27    In the last two years, I have reason to believe that Murrell has sought to intimidate a colleague in the History Department by calling him a "snitch "

28    I do not believe that either Connolly or Murrell have been disciplined by the College for any reason   I do not believe either plaintiff has filed any grievances at the College, except by Murrell with respect to his office space issue

I declare under penalty of perjury of the laws of the State of Washington and the United States of America that the foregoing is true and correct

DATED this _15TH_ day of February 2002

_____
MARK REISMAN

SUBSCRIBED AND SWORN TO (or affirmed) before me this _15TH_ day of _FEBRUARY_ by

_____
Notary Public
My Commission Expires _July 26, 2005_

AFFIDAVIT OF MARK REISMAN                    6
C005525fdb

C \EUDORA\ATTACH\PT EDITED AFFIDAVIT OF
MARK REISMAN DOC

ATTORNEY GENERAL OF WASHINGTON
Tort Claims Division
900 – Fourth Avenue, Suite 2200
Seattle, WA  98164-1012
(206) 464-7352

Exhibit A



**GRAYS HARBOR COLLEGE**

# Memo

**To:** Selection Committee
**From:** Mark Reisman
**Date:** 4/16/97
**Re:** Sabbatical replacement, Business Division - Dave Connolly

---

Dave Connolly has asked me to recommend him for the sabbatical replacement position in our Business Division. I am happy to recommend him.

Dave has taught many courses in the business management program, on and off campus. My judgment is that he has always met his part time teaching responsibility in a professional manner. His teaching style is traditional and didactic. He is organized, presents information clearly, and clearly communicates course goals and student work expectations. He has been interested in meeting with full time faculty in the business division to make sure there was consistency in course goals and objectives and course scope and depth.

In addition, Dave has developed and proposed several classes including a course in TQM and a public sector management course.

Dave's students generally rate his performance above average. During his tenure as a part time instructor, he has received one serious student complaint during one course. After investigating the complaint to the best of my ability, I came to the conclusion that the complaint probably arose from a personality conflict between Dave and one student. The next quarter, Dave's students rated his performance above average.

I am including copies of student evaluations of Dave's courses for the committee's use.

The college has been fortunate to have a pool of part time business instructors available to teach business management courses. Dave has done a good job as one of them. He deserves appropriate consideration for this opening.

1

Produced pursuant to Protective Order          80000469